UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

D-1  PATRICK WITTBRODT,
D-2  DR. APRIL TYLER,
D-3  JEFFREY FILLMORE

    Defendants.

CASE NO. 18-cr-20560
HON. Linda V. Parker

VIO.: 18 U.S.C. § 2
18 U.S.C. § 1347
18 U.S.C. § 1349
18 U.S.C. § 1957

## FIRST SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

At all times relevant to this First Superseding Indictment:

## GENERAL ALLEGATIONS

### I. Blue Cross Blue Shield and Express Scripts

1. Blue Cross and Blue Shield of Michigan ("BCBS") is a private health care insurance provider and administrator. BCBS affects commerce by providing insurance contracts and plans under which medical benefits, items and services are provided to insured individuals. When BCBS acts as an insurer it receives premiums and then funds all covered services. When BCBS acts as an administrator it is paid a fee to allow an employer to utilize BCBS networks of

1

participating providers and/or for BCBS to process claims. The employer then reimburses BCBS for the amount paid to the provider for each claim.

2. Express Scripts ("ESI") is a prescription benefit plan. ESI affects commerce by providing insurance contracts and plans under which medical benefits, items and services are provided to insured individuals. The United Auto Workers Union ("UAW") had a contract with ESI to process prescription drug related claims as part of the BCBS health care benefit program. A pharmacy in the Express Scripts network submitted claims for prescription drugs for UAW beneficiaries to Express Scripts for processing and approval. If the claim was approved, Express Scripts received reimbursement from the UAW and paid the pharmacy.

3. BCBS and ESI have contracted with the UAW to provide "health care benefit programs" as defined by Title 18, United States Code, Section 24(b).

4. The BCBS and ESI health care benefit programs act as the administrator for the UAW's health coverage. This means that BCBS and ESI are paid a fee to allow the UAW to utilize the BCBS and ESI networks and/or for BCBS and ESI to process the UAW members' and dependent health coverage claims. BCBS is contractually obligated to investigate and recover losses for the UAW resulting from waste, fraud and abuse.

## II. Medicare Part D

5. The Medicare Program (Medicare) is the federal healthcare program for the aged

2

and disabled established by Congress in 1965, as Title XVIII of the Social Security Act and codified at 42 U.S.C. § 1395. Medicare is administered through the Centers for Medicare and Medicaid Services (CMS). CMS is a division of the United States Department of Health and Human Services. Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries." Medicare is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

6. Medicare includes coverage under four primary components: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C) and prescription drug benefits (Part D).

7. Medicare Part D provides prescription drug coverage to persons who are eligible for Medicare. Under the program, eligible Medicare beneficiaries may enroll in a Medicare Prescription Drug Plan that adds prescription drug coverage to traditional Medicare. Alternatively, Medicare-eligible beneficiaries may obtain prescription drug coverage by enrolling in a Medicare Advantage Plan under Part C of the Medicare program. Such Medicare Advantage Plans provide the full range of Medicare coverage to enrollees, including a prescription drug benefit under Medicare Part D.

8. At least some UAW retirees utilized Medicare Part D to pay for some or all of their prescription drug costs.

### III. Defendants

9. Defendant PATRICK WITTBRODT, a resident of Genesee County, is the owner and operator of Wittbrodt Consulting, LLC and worked with defendant DR. APRIL TYLER at Fenton Creative Healthcare from on or about July 2014 to July 2017. Defendant PATRICK WITTBRODT served as an unpaid consultant/manager while operating at defendant DR. APRIL TYLER's Fenton Creative Healthcare clinic.

10. Defendant DR. APRIL TYLER is an osteopathic physician who owns and operates Fenton Creative Healthcare located at 1361 N Long Lake Rd, Fenton, MI 48430. Defendant DR. APRIL TYLER holds a Michigan osteopathic medicine and surgery license and is the sole practitioner at Fenton Creative Healthcare.

11. Defendant JEFFREY FILLMORE, a resident of Genesee county, worked for defendant PATRICK WITTBRODT as an independent contractor compensated by commission based upon sales of compounded creams and other services. Defendant JEFFREY FILLMORE also operated out of Fenton Creative Healthcare.

## COUNT ONE
(18 U.S.C. §§ 1347, 1349 – Conspiracy To Commit Health Care Fraud)

D-1 PATRICK WITTBRODT
D-2 DR. APRIL TYLER
D-3 JEFFREY FILLMORE

12. The Grand Jury incorporates by reference paragraphs 1-11 as though fully restated and re-alleged herein.

13. Beginning on or about July 2014 continuing through July 2017, in the Eastern District of Michigan, defendants PATRICK WITTBRODT, DR. APRIL TYLER and JEFFREY FILLMORE did conspire and agree with each other and other persons known and unknown to the Grand Jury to knowingly and willfully execute, or attempt to execute, a scheme or artifice to defraud the health care benefit programs administered by BCBS, ESI and/or Medicare, or to obtain by means of materially false or fraudulent pretenses, representations, or promises, any of the money or property owned by or under the control of said health care benefit programs in connection with the delivery of or payment for health care benefits, items and medical services.

14. The object and purpose of the conspiracy and scheme was for defendants PATRICK WITTBRODT, DR. APRIL TYLER and JEFFREY FILLMORE to unlawfully enrich themselves and others by submitting or causing others to submit false and fraudulent claims to BCBS, ESI and/or Medicare for prescription pain creams, scar creams, pain patches and vitamins that were

5

fraudulently authorized by defendant DR. APRIL TYLER and/or not determined to be medically necessary by defendant DR. APRIL TYLER.

15. In order to execute and carry out their illegal activities, defendants PATRICK WITTBRODT, DR. APRIL TYLER and JEFFREY FILLMORE conspired, between themselves and with other persons known and unknown to the Grand Jury, and committed, aided and abetted the commission, or otherwise caused others to commit, one or more of the following acts:

   i. Due to the high reimbursement rate paid by UAW administrator BCBS, ESI and/or Medicare for prescription pain cream, scar cream, pain patches and/or vitamins, defendants and their co-conspirators targeted such health benefit programs.

   ii. Defendant JEFFREY FILLMORE had acquaintances and personal contacts at the UAW through his job and various family members.

   iii. Defendant PATRICK WITTBRODT had business connections with multiple pharmacies. Defendant PATRICK WITTBRODT entered into one or more contracts with various pharmacies to receive kickback payments for pain cream, scar cream, pain patch and vitamin prescriptions that he would provide to such pharmacies. In exchange for the pain cream, scar cream, pain patch and vitamin prescriptions, the pharmacies would pay defendant PATRICK

6

WITTBRODT money for each of those prescriptions directed to them.

iv. Defendant PATRICK WITTBRODT also entered into a contract with defendant JEFFREY FILLMORE. In that contract, defendant PATRICK WITTBRODT agreed to pay defendant JEFFREY FILLMORE for each prescription for pain cream, scar cream, pain patch and/or vitamin prescription that he generated. After defendant PATRICK WITTBRODT received payment from the pharmacies, he did pay defendant JEFFREY FILLMORE a monetary kickback for the prescriptions that he generated.

v. Defendants JEFFREY FILLMORE and PATRICK WITTBRODT scheduled time at various UAW meetings where defendants PATRICK WITTBRODT, DR. APRIL TYLER and JEFFREY FILLMORE and other persons known and unknown to the grand jury touted pain cream, scar cream, pain patches and vitamins to the UAW members. An aspect of defendants' presentation was that the UAW members could receive their prescriptions free -- without paying a prescription drug copay at the pharmacy.

vi. Defendants PATRICK WITTBRODT, DR. APRIL TYLER and JEFFREY FILLMORE and other persons known and unknown to

the grand jury had the UAW members sign up for the pain cream, scar cream, pain patches and/or vitamins by completing medical evaluation forms. On the medical evaluation forms, the UAW members provided their insurance information, along with their family members' insurance information.

vii. Defendant DR. APRIL TYLER authorized pain cream, scar cream, pain patch and/or vitamin prescriptions for the UAW members and/or their family members. Defendant DR. APRIL TYLER did not establish a valid doctor-patient relationship with any of the UAW members and/or did not determine medical necessity for the prescriptions she wrote for the UAW members. Moreover, defendant DR. APRIL TYLER provided the pain cream, scar cream, pain patch and/or vitamin prescriptions without a physical exam and/or any corresponding office visit.

viii. Defendant DR. APRIL TYLER also pre-signed pain cream and scar cream prescriptions and allowed defendants PATRICK WITTBRODT and JEFFREY FILLMORE and other persons known and unknown to the grand jury to choose which compounded creams, patches and vitamins to write on the prescriptions. Defendants PATRICK WITTBRODT and JEFFREY FILLMORE

and other persons known and unknown to the grand jury also forged, or caused others to forge, defendant DR. APRIL TYLER's signature on some prescriptions for pain cream, scar cream, pain patches and/or vitamins.

ix. Defendants PATRICK WITTBRODT, DR. APRIL TYLER and JEFFREY FILLMORE and other persons known and unknown to the grand jury then had the prescriptions filled by pharmacies chosen by defendant PATRICK WITTBRODT. On multiple occasions defendant PATRICK WITTBRODT entered into a contract with the pharmacies under the terms of which defendant PATRICK WITTBRODT was provided a monetary kickback for generating prescriptions for such pharmacies. The UAW members did not have a choice as to which pharmacy would fill their prescriptions.

x. The pharmacies that defendant PATRICK WITTBRODT had chosen then filled the pain cream, scar cream, pain patch and vitamin prescriptions and submitted the bill to BCBS, ESI and/or Medicare for reimbursement.

xi. The pain cream, scar cream, pain patch and vitamin prescriptions were periodically re-filled and/or re-billed, regardless of whether the UAW member requested a refill or not.

xii. In connection with this fraudulent scheme, BCBS and/or ESI was billed over $9,500,000 and Medicare paid over $800,000.

16. Defendants' agreement was all in violation of 18 U.S.C. §§ 1347 and 1349.

## COUNTS TWO – EIGHTEEN
(18 U.S.C. §§ 2, 1347- Healthcare Fraud)

D-1  PATRICK WITTBRODT
D-2  DR. APRIL TYLER
D-3  JEFFREY FILLMORE

17. The Grand Jury incorporates by reference paragraphs 1 through 16 as though fully restated and re-alleged herein.

18. Defendants PATRICK WITTBRODT, DR. APRIL TYLER and JEFFREY FILLMORE and other persons known and unknown to the grand jury did knowingly and willfully execute, or attempt to execute, a scheme or artifice to defraud the health care benefit programs administered by BCBS, ESI and/or Medicare, or to obtain by materially false or fraudulent pretenses, representations, or promises, any money or property owned by, or under the custody or control of the health care benefit programs administered by BCBS, ESI and/or Medicare, in connection with the delivery of, or payment for, healthcare benefits, items or services. The defendants submitted or caused to be submitted, on the dates set forth in the chart below in the Eastern District of Michigan, the following false and fraudulent claims to the health care benefit programs administered by BCBS, ESI and/or Medicare.

| Count | Date On or About When Prescription Was Written | Date On or About When Claim Was Submitted | Patient | Drug | Amount Paid |
|---|---|---|---|---|---|
| 2 | 10/27/2015 | 10/29/2015 | A.G. | fluticasone / gabapentin pain cream | $17,384.72 |
| 3 | 3/11/2015 | 3/12/2015 | D.R. | Sinelee pain patch | $1,921.20 |
| 4 | 1/6/2016 | 1/6/2016 | H.R. | Medi-10 capsules | $1,047.99 |
| 5 | 1/6/2016 | 1/6/2016 | T.R. | fluticasone / gabapentin pain cream | $12,276.41 |
| 6 | 1/27/2016 | 2/2/2016 | R.S. | fluticasone / gabapentin pain cream | $18,587.26 |
| 7 | 1/27/2016 | 2/5/2016 | K.S. | fluticasone / gabapentin scar cream | $17,750.65 |
| 8 | 4/1/2016 | 5/4/2016 | J.F. | fluticasone / gabapentin scar cream | $18,314.87 |
| 9 | 4/1/2016 | 4/4/2016 | L.F. | fluticasone / gabapentin pain cream | $17,720.65 |
| 10 | 4/1/2016 | 4/4/2016 | A.F. | fluticasone / gabapentin pain cream | $17,720.65 |
| 11 | 6/7/2016 | 6/7/2016 | S.S. | diclofenac 1.5% topical solution | $292.26 |
| 12 | 6/7/2016 | 6/7/2016 | J.S. | lidocaine 5% ointment | $914.53 |
| 13 | 11/17/2015 | 11/23/2015 | A.R. | fluticasone scar cream | $8,231.71 |

| Count | Date On or About When Prescription Was Written | Date On or About When Claim Was Submitted | Patient | Drug | Amount Paid |
|---|---|---|---|---|---|
| 14 | 11/17/2015 | 11/23/2015 | L.R. | fluticasone / gabapentin pain cream | $8,231.71 |
| 15 | 8/23/2016 | 10/6/2016 | A.G. | diclofenac 1.5% topical solution | $292.81 |
| 16 | 9/28/2016 | 10/6/2016 | M.C. | diclofenac 1.5% topical solution | $292.81 |
| 17 | 1/16/2017 | 2/7/2017 | O.B. | lidocaine 5% ointment | $379.25 |
| 18 | 1/12/2017 | 1/21/2017 | O.H. | lidocaine 5% ointment | $776.28 |

19. All in violation of 18 U.S.C. §§ 1347 and 2.

## **COUNTS 19 - 27**
(18 U.S.C. §§ 2, 1957 – Money Laundering)

D-1   PATRICK WITTBRODT

20. On or about the dates set forth below, in the Eastern District of Michigan, and elsewhere, defendant PATRICK WITTBRODT did knowingly engage or attempt to engage in the following monetary transactions, by and through a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of funds, such property having been derived from a specified unlawful activity -- healthcare fraud.

| Count | On or About Date | Amount | Description of Monetary Transaction |
|---|---|---|---|
| 19 | 1/8/2016 | $10,278.75 | Funds transferred from account WF-1991 to Jeffrey Fillmore |
| 20 | 2/17/2016 | $13,035.75 | Funds transferred from account WF-1991 to Jeffrey Fillmore |
| 21 | 3/4/2016 | $11,660.35 | Funds transferred from account WF-1991 to Jeffrey Fillmore |
| 22 | 3/8/2016 | $23,894 | Funds transferred from account WF-1991 to Jeffrey Fillmore |
| 23 | 6/1/2016 | $18,142 | Funds transferred from account WF-1991 to Jeffrey Fillmore |
| 24 | 7/31/2016 | $28,000 | Funds transferred from account WF-1991 to First American Title |
| 25 | 8/12/2016 | $227,931.46 | Funds transferred from JPMC-2598 to JPMC-0250 |
| 26 | 10/25/2016 | $209,178.30 | Funds transferred from JPMC-0250 to First American Title. |
| 27 | 11/15/2017 | $30,500.00 | Funds transferred from account WF-1991 to Sandstone Landscaping |

21. All in violation of 18 U.S.C. §§ 1957 and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461; 18 U.S.C. § 982(a)(7))

22. The allegations contained in Counts 1-27 of this First Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture against defendants pursuant 18 U.S.C. §§ 981 and 982, and 28 U.S.C. § 261.

23. Pursuant to 18 U.S.C. § 981(a)(1)(C), together with 28 U.S.C. § 2461, upon

being convicted of the crime charged in Counts 1-18 of this First Superseding Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

24. Pursuant to 18 U.S.C. § 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 18 of this First Superseding Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

25. Pursuant to 18 U.S.C. § 982(a)(1), upon being convicted of the crimes charged in Counts 19 through 27 of this First Superseding Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to such property.

26. <u>Money Judgment</u>: Such property includes, but is not limited to, forfeiture money judgments in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of defendants' violations, as alleged in this First Superseding Indictment.

27. <u>Substitute Assets</u>:  If the property subject to forfeiture, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b) and/or Title 28, United States Code, Section 2461, to seek to forfeit any other property of defendants up to the value of the property subject to forfeiture.

                              THIS IS A TRUE BILL

                              <u>s/GRAND JURY FOREPERSON</u>

MATTHEW SCHNEIDER
United States Attorney

<u>s/WAYNE F. PRATT</u>
Chief, Health Care Fraud Unit
Assistant United States attorney

s/MICHAEL HEESTERS
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
Email: michael.heesters@usdoj.gov
Phone: (313) 226-9736

s/SHANKAR RAMAMURTHY
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9562
Email: shankar.ramamurthy@usdoj.gov


Dated: August 23, 2018

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>18-cr-20560 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: |

Case Title: USA v. <u>D-1 Patrick Wittbrodt, D-2 Dr April Tyler, D-3 Jeffrey Fillmore</u>

County where offense occurred : <u>Genesee County</u>

Check One:  ☒ Felony    ☐ Misdemeanor    ☐ Petty

____Indictment/____Information --- **no prior complaint.**
____Indictment/____Information --- **based upon prior complaint** [Case number:                    ]
__✓__Indictment/____Information --- **based upon LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

Superseding to Case No: 18-cr-20560          Judge: Linda V. Parker

☐ Corrects errors; no additional charges or defendants.
☒ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| D-1 PATRICK WITTBRODT,<br>D-2 DR. APRIL TYLER,<br>D-3 JEFFREY FILLMORE | 18 USC §1957<br>18 USC §1347<br>18 USC §1349<br>18 USC §2 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

August 23, 2018
Date

Michael Heesters
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (313) 226-9736
Fax:    (313) 226-2621
E-Mail address: michael.heesters@usdoj.gov
Attorney Bar #: N/A

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.