

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

     Plaintiff,

v.

D-1 Patrick Wittbrodt,

     Defendant.

_____/

No. 18-20560

Hon. Laurie J. Michelson

Offense(s):
18 U.S.C. §§ 1347, 1349

## Rule 11 Plea Agreement

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant Patrick Wittbrodt and the government agree as follows:

1. **Guilty Plea**

  A. **Count(s) of Conviction**

Defendant will enter a plea of guilty to Count One of the First Superseding Indictment, which charges him with conspiracy to commit healthcare fraud, in violation of 18 U.S.C. §§ 1347, 1349.

  B. **Elements of Offense(s)**

The elements of Count One are as follows:

  1. That two or more persons conspired, or agreed, to commit the crime of healthcare fraud, by knowingly devising a scheme or artifice to defraud a healthcare benefit program in connection with the delivery or

payment for healthcare benefits, items or services.

2. That the defendant knowingly and voluntarily joined the conspiracy.

3. Defendant executed or attempted to execute this scheme or artifice to defraud; and

4. Defendant acted with intent to defraud.

C.      **Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for defendant's guilty plea(s):

Beginning on or about July 2014 continuing through July 2017, in the Eastern District of Michigan, defendant Patrick Wittbrodt did conspire and agree with other persons to knowingly and willfully execute, or attempt to execute, a scheme or artifice to defraud the health care benefit programs administered by Blue Cross Blue Shield of Michigan ("BCBS") and Medicare, or to obtain by means of materially false or fraudulent pretenses, representations, or promises, any of the money or property owned by or under the control of said health care benefit programs in connection with the delivery of or payment for health care benefits, items and medical services.

It was the purpose of the conspiracy for defendant Patrick Wittbrodt to unlawfully enrich himself by, among other things, (a) causing others to submit false and fraudulent claims to BCBS and Medicare for prescription pain creams, scar

- 2 -

creams, pain patches and vitamins that were fraudulently authorized and/or not determined to be medically necessary; (b) concealing the submission of false and fraudulent claims to BCBS and Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds from the fraud for the personal use and benefit of the defendant.

To accomplish the scheme, defendant Patrick Wittbrodt conspired with at least co-defendants Dr. April Tyler and Jeffrey Fillmore to have fraudulent prescriptions for United Auto Workers ("UAW") beneficiaries and retirees filled for high reimbursement compounds drugs, such as, pain cream, scar cream, pain patches and/or vitamins.   Specifically, defendant Patrick Wittbrodt, along with co-defendants Dr. April Tyler and Jeffrey Fillmore, would attend various UAW meetings and touted pain cream, scar cream, pain patches and vitamins to the UAW members.   Defendant Patrick Wittbrodt and co-defendants Dr. April Tyler and Jeffrey Fillmore then signed up the UAW members for the pain cream, scar cream, pain patches and/or vitamins by completing medical evaluation forms.   On the medical evaluation forms, the UAW members provided their insurance information, along with their family members' insurance information.   Defendant Patrick Wittbrodt and co-defendants Dr. April Tyler and Jeffrey Fillmore would then create prescriptions for some of the UAW members' families.

Defendant Patrick Wittbrodt knew or should have known that the prescriptions for the UAW members included in this scheme were not written in good faith because co-defendant Dr. April Tyler did not establish a valid doctor-patient relationship with any of the UAW members and/or did not determine medical necessity for the prescriptions she wrote for the UAW members. Specifically, co-defendant Dr. April Tyler provided the pain cream, scar cream, pain patch and/or vitamin prescriptions without a physical exam and/or any corresponding office visit. Co-defendant Dr. April Tyler also pre-signed pain cream and scar cream prescriptions and allowed defendant Patrick Wittbrodt and co-defendant Jeffrey Fillmore to choose which compounded creams, patches and vitamins to write on the prescriptions.

An aspect of defendant Patrick Wittbrodt and co-defendants Dr. April Tyler and Jeffrey Fillmore's presentation was that the UAW members could receive their prescriptions free -- without paying a prescription drug copay at the pharmacy. UAW members also did not have a choice as to which pharmacy would fill their prescriptions generated in this conspiracy.

The pharmacies that defendant Patrick Wittbrodt had chosen then filled the pain cream, scar cream, pain patch and vitamin prescriptions and submitted the bill to BCBS and/or Medicare for reimbursement. The same pharmacies would then

- 4 -

periodically re-fill and/or re-bill the compounded pain cream prescriptions -- regardless of whether the UAW member or retiree requested a refill or not.

As part of the scheme, defendant Wittbrodt entered into one or more contracts with various pharmacies to receive referral payments for pain cream, scar cream, pain patch and vitamin prescriptions that he would provide to such pharmacies. In exchange for the pain cream, scar cream, pain patch and vitamin prescriptions, the pharmacies would pay defendant Patrick Wittbrodt money for each of those prescriptions directed to them.

Defendant Patrick Wittbrodt also entered into a contract with co-defendant Jeffrey Fillmore. In that contract, defendant Patrick Wittbrodt agreed to pay -- and did pay -- co-defendant Jeffrey Fillmore for each prescription for pain cream, scar cream, pain patch and/or vitamin prescription that he generated.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for defendant's guilty plea to the charges against him. It does not include all of the facts known to him concerning criminal activities in which he and others engaged. Defendant Patrick Wittbrodt makes this statement knowingly and voluntarily and because he is in fact guilty of the crime charged.

2. **Sentencing Guidelines**

A. **Standard of Proof**

The Court will find sentencing factors by a preponderance of the evidence.

B.    **Agreed Guideline Range**

There are no sentencing guideline disputes. Except as provided below, the defendant's guideline range is 70 - 87 months, as set forth on the attached worksheets. If the Court finds:

1. That defendant's criminal history category is higher than reflected on the attached worksheets, or

2. that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than 70 - 87 months, the higher guideline range becomes the **agreed range**.  However, if the Court finds that defendant is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other federal law, and that finding is not already reflected in the attached worksheets, this paragraph does not authorize a corresponding increase in the agreed range.

Neither party may take a position concerning the applicable guidelines that is different from any position of that party as reflected in the attached worksheets,

except as necessary to the Court's determination regarding subsections 1) and 2),
above.

3.   **Sentence**

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing
so must consider the sentencing guideline range.

A.   **Imprisonment**

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of
imprisonment in this case may not exceed the top of the sentencing guideline range
as determined by Paragraph 2B.

B.   **Supervised Release**

A term of supervised release follows the term of imprisonment.  The Court
must impose a term of supervised release, which in this case is 1 to 3 years.   The
agreement concerning imprisonment described above in Paragraph 3A does not
apply to any term of imprisonment that results from any later revocation of
supervised release.

C.   **Special Assessment**

Defendant will pay a special assessment of $100.00 at the time of sentencing.

D.   **Fine**

There is no agreement as to fines.

- 7 -

E.    **Restitution**

There is no agreement as to restitution.  The government contends that the victims and the full amounts of restitution in this case, are as follows: Blue Cross Blue Shield of Michigan, $7,317,173.51 and United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, Medicare Trust Fund, $902,387.93.  Defendant Patrick Wittbrodt reserves the right to contest the amount of restitution at sentencing.  The Court shall order restitution to every identifiable victim of defendant's offense.

F.    **Forfeiture**

Pursuant to 18 U.S.C. § 982(a)(7) and/or § 981(a)(1)(C) with 28 U.S.C. § 2461(c), Defendant agrees to forfeit to the United States his interest in all property, real and personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to Defendant's Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. §§ 1347, 1349, as charged in Count One of the First Superseding Indictment.

Specifically, Defendant agrees to the forfeiture of the following:

1.    Eighteen Thousand Dollars in U.S. Currency ($18,000) in lieu of 2015 Land Rover LR4, VIN SALAK2V68FA740074;

2.    All funds on deposit in JP Morgan Chase account number 869690250 ($204.14);

3.    All funds on deposit in Genisys Credit Union account number 78100-S15 ($7,100.58);

4.    All funds on deposit in E Trade Securities LLC account number 69104030, (approximately $4,883.94 as of August 30, 2018);

5.    All funds on deposit in Wells Fargo Clearing Services LLC account number 7529-1991 (approximately $201.88 as of August 30, 2018);

6.    All funds on deposit in Wells Fargo Clearing Services LLC account number 2174-8924 (approximately $15,374.65 as of August 30, 2018);

7.    All funds on deposit in Wells Fargo Clearing Services LLC account number 4667-7623 (approximately $26,546.28 as of August 30, 2018).

In addition, Defendant agrees to the entry of a forfeiture money judgment against him in favor of the United States in the amount of $796,522.31, representing the total value of the property subject to forfeiture for Defendant's violation of Count One of the First Superseding Indictment, to the extent such value is not satisfied by the specific forfeitures set forth in subsections 1-7 of this section.

Defendant agrees that the forfeiture money judgment may be satisfied, to whatever extent possible, from any property owned or under the control of Defendant. To satisfy the money judgment, Defendant explicitly agrees to the forfeiture of any assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his rights to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant agrees to the entry of one or more orders of forfeiture incorporating the forfeiture of assets enumerated in subsections 1-7 of this section and the above-referenced money judgment, including the Court's prompt entry of a Preliminary

Order of Forfeiture, following defendant's guilty plea, upon application by the United States at, or any time before, his sentencing in this case, as mandated by Federal Rule of Criminal Procedure 32.2. Defendant agrees to sign such orders, indicating he consents to its entry if requested to do so by the Government. Defendant agrees that the forfeiture order(s) will become final as to him at the time entered by the Court.

Defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver clear title to property subject to forfeiture under this agreement to the United States and will execute such legal documents as may be required to transfer rights, title, and/or ownership to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted, or otherwise made unavailable for forfeiture. If any other person or entity has any interest in such property, defendant will assist in obtaining a release of interest from any such other person or entity.

Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), or otherwise, at the time his guilty plea is accepted.

In entering into this agreement with respect to forfeiture, defendant knowingly, voluntarily, and intelligently waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture

carried out in accordance with this Plea Agreement on any grounds, including any Double Jeopardy challenge or other challenge to the above-described forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

Defendant also agrees that defendant shall assist the United States in all proceedings, whether administrative or judicial, involving the forfeiture, disgorgement, transfer, or surrender of all rights, title, and interest, regardless of their nature or form, in the property that defendant has agreed to forfeit, disgorge, transfer, or surrender, and any other assets, including real and personal property, cash, and other monetary instruments, wherever located, which defendant or others to his knowledge have accumulated as a result of illegal activities. Such assistance will include agreement by defendant's heirs, successors, and assigns, to forfeiture, disgorgement, transfer, or surrender, to any interest in the above-described forfeiture. Such assistance will involve an agreement on defendant's part to the entry of an order enjoining the transfer or encumbrance of assets that may be identified as being subject to forfeiture, disgorgement, transfer, or surrender.

Defendant further agrees to identify all assets over which he exercises control, directly or indirectly, or has exercised such control, within the past five years. He also agrees to identify all assets in which he has or had during that time any financial interest and to provide all necessary and appropriate documentation with respect to

- 11 -

said assets, including consents to forfeiture, quit claim deeds, and any and all other documents necessary to deliver good and marketable title to said property. Defendant agrees to take all steps as requested by the government to obtain from any other parties by any lawful means any records of assets owned at any time by defendant. He also agrees to undergo any polygraph examination the government may choose to administer concerning such assets and to provide and/or consent to the release of his tax returns for the previous five years.

Defendant expressly waives his right to have any determination regarding the forfeitability of the property referenced above whether by judge or by a jury under Rule 32.2 of the Federal Rules of Criminal Procedure. Defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

Defendant further agrees to hold the United States, its agents, and its employees, harmless from any claims whatsoever in connection with the seizure and forfeiture of property subject to forfeiture under this agreement.

Non-Abatement of Criminal Forfeiture: Defendant agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to

this agreement shall be determined as if defendant had survived, and that determination shall be binding upon defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

4.    **Cooperation Agreement**

The written cooperation agreement between defendant and the government, dated November 30, 2018, is part of this plea agreement.

5.    **Exclusion from the Medicare Program and Other Federal Health Care Programs**

The defendant understands and acknowledges that as a result of this plea, the defendant will be excluded from Medicare, Medicaid, and all Federal health care programs. Defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including but not limited to the United States Department of Health and Human Services, to effectuate this exclusion within 60 days of receiving the documents. This exclusion will not affect defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

6.    **Each Party's Right to Withdraw from This Agreement**

The government may withdraw from this agreement if the Court finds the correct guideline range to be different then is determined by Paragraph 2B.

Defendant may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than the maximum allowed by Paragraph 3 (87 months). This is the only reason for which defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than the maximum allowed by Paragraph 3 (87 months).

7.   **Appeal Waiver**

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 87 months, the defendant also waives any right he may have to appeal his sentence on any grounds.  If the defendant's sentence of imprisonment is at least 70 months, the government waives any right it may have to appeal the defendant's sentence.

This waiver does not bar filing a claim of ineffective assistance of counsel in court.

8.   **Consequences of Withdrawal of Guilty Plea(s) or Vacation of Conviction(s)**

If defendant is allowed to withdraw his guilty plea(s) or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty plea(s)

- 14 -

becomes final, which charges relate directly or indirectly to the conduct underlying

the guilty plea(s) or to any conduct reflected in the attached worksheets, defendant

waives his right to challenge the additional charges on the ground that they were not

filed in a timely manner, including any claim that they were filed after the

limitations period expired.

9.      **Collateral Consequences of Conviction**

Defendant understands that his conviction(s) here may carry additional

consequences under federal and state law, including the potential loss of the right to

vote, right to carry a firearm, right to serve on a jury, and ability to hold certain

licenses or to be employed in certain fields. Defendant further understands that, if

he is not a native-born citizen of the United States, there may be adverse

immigration consequences resulting from conviction. These include possible

removal from the United States, denial of citizenship, denaturalization, denied

admission to the United States in the future and other possible consequences.

Defendant understands that no one, including the defendant's attorney or the Court,

can predict to a certainty the effect of defendant's conviction on any of these

matters. Defendant nevertheless affirms that he chooses to plead guilty regardless of

any immigration consequences or other collateral consequences of his conviction.

10.   **Parties to Plea Agreement**

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

11.   **Scope of Plea Agreement**

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

- 16 -

12.    **Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the Office

of the United States Attorney by 5:00 P.M. on 2/1/2019. The government reserves

the right to modify or revoke this offer at any time before defendant pleads guilty.

MATTHEW SCHNEIDER
United States Attorney

Wayne F. Pratt
Assistant United States Attorney
Chief, Health Care Fraud

Michael Heesters
Assistant United States Attorney

Date: 2/1/2019

By signing below, defendant acknowledges that he has read (or been read) this
entire document, understands it, and agrees to its terms. He also acknowledges that
he is satisfied with his attorney's advice and representation. Defendant agrees that
he has had a full and complete opportunity to confer with his lawyer, and has had
all of his questions answered by his lawyer.

Eric Nemeth
Attorney for Defendant

Patrick Wittbrodt
Defendant

3 - 6 - 2019
Date

2/6/19
Date

- 17 -

## WORKSHEET A
# OFFENSE LEVEL

Defendant **Patrick Wittbrodt**                     District/Office _Eastern District of Michigan_

Docket Number _18-20560_

Count Number(s) _1_                     U.S. Code Title & Section _18_ : _1347_     ; _18_ : _1349_

_Guidelines Manual_ Edition Used: 20_18_ (_Note_: The Worksheets are keyed to the November 1, 2016 _Guidelines Manual_)

### INSTRUCTIONS

Complete a separate Worksheet A for each count of conviction or as required in a situation listed at the bottom of Worksheet B.*
_Exceptions_: Use only a single Worksheet A where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (_see_ §3D1.2(d)) or where a count of conspiracy, solicitation, or attempt is grouped with a substantive count that was the sole object of the conspiracy, solicitation, or attempt (_see_ §3D1.2(a) & (b)).

### 1. Offense Level (See Chapter Two)

Enter the applicable base offense level and any specific offense characteristics from Chapter Two and explain the bases for these determinations. Enter the sum in the box provided.

| Guideline | Description | Level |
|---|---|---|
| 2B1.1 | healthcare fraud | +6 |
| 2B1.1(b)(1) | Loss amount  (BC/BS $7,317,173.51 + Medicare $902,387.93 = $8,219,561.44) | +18 |
| 2B1.1(b)(17)(A) | more than $1,000,000 derived from one or more financial institutions (see definition of financial institution — Application Note #1) | +2 |
|  |  |  |
|  |  |  |

If the Chapter Two guideline requires application of a cross reference or other reference, an additional Worksheet A may be needed for that analysis. _See_ §1B1.5.      Sum  **26**

### 2. Victim-Related Adjustments (See Chapter Three, Part A)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".      §_____      [ ]

### 3. Role in the Offense Adjustments (See Chapter Three, Part B)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (–) sign in front of the adjustment. If no adjustment is applicable, enter "0".      § _3B1.1 (organizer)_   **+4**

### 4. Obstruction Adjustments (See Chapter Three, Part C)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".      §_____      [ ]

### 5. Adjusted Offense Level

Enter the sum of Items 1–4. If this Worksheet A does not cover all counts of conviction or situations listed at the bottom of Worksheet B, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.      **30**

✓  Check here if **all** counts (_including_ situations listed at the bottom of Worksheet B)* are addressed on this one Worksheet A. If so, no Worksheet B is used.

✓  If the defendant has no criminal history, enter "I" here and on Worksheet D, Item 4. No Worksheet C is used.

## WORKSHEET B
# MULTIPLE COUNTS*

Defendant _Patrick Wittbrodt_                  Docket Number _18-20560_

### INSTRUCTIONS

**STEP 1:** Determine if any of the counts group under §3D1.2(a)–(d) ("the grouping rules"). All, some, or none of the counts may group. Some of the counts may have already been grouped in the application under Worksheet A, specifically: (1) counts grouped under §3D1.2(d); or (2) a count charging conspiracy, solicitation, or attempt that is grouped with the substantive count of conviction (*see* §3D1.2(a)). Explain the reasons for grouping:

_____
_____
_____

**STEP 2:** Using the box(es) provided below, for each group of "closely related counts" (*i.e.*, counts that group together under any of the four grouping rules), enter the highest adjusted offense level from Item 5 of the various Worksheets "A" that comprise the group. *See* §3D1.3. Note that a "group" may consist of a single count that has not grouped with any other count. In those instances, the offense level for the group will be the adjusted offense level for the single count.

**STEP 3:** Enter the number of units to be assigned to each group (*see* §3D1.4) as follows:
- One unit (1) for the group of counts with the highest offense level
- An additional unit (1) for each group that is equally serious or 1 to 4 levels less serious
- An additional half unit (1/2) for each group that is 5 to 8 levels less serious
- No increase in units for groups that are 9 or more levels less serious

| 1. | **Adjusted Offense Level for the First Group of Counts** | | |
|---|---|---|---|
| | Count number(s) _____ | | _____ Unit |

| 2. | **Adjusted Offense Level for the Second Group of Counts** | | |
|---|---|---|---|
| | Count number(s) _____ | | _____ Unit |

| 3. | **Adjusted Offense Level for the Third Group of Counts** | | |
|---|---|---|---|
| | Count number(s) _____ | | _____ Unit |

| 4. | **Adjusted Offense Level for the Fourth Group of Counts** | | |
|---|---|---|---|
| | Count number(s) _____ | | _____ Unit |

| 5. | **Adjusted Offense Level for the Fifth Group of Counts** | | |
|---|---|---|---|
| | Count number(s) _____ | | _____ Unit |

| 6. | **Total Units** | |
|---|---|---|
| | | _____ **Total Units** |

| 7. | **Increase in Offense Level Based on Total Units** (See §3D1.4) | |
|---|---|---|
| | 1 unit:      no increase        2½ – 3 units:      add 3 levels | |
| | 1½ units:   add 1 level        3½ – 5 units:      add 4 levels | |
| | 2 units:     add 2 levels      More than 5 units:  add 5 levels | |

| 8. | **Highest of the Adjusted Offense Levels from Items 1–5 Above** | |
|---|---|---|
| | | |

| 9. | **Combined Adjusted Offense Level** (See §3D1.4) | |
|---|---|---|
| | Enter the sum of Items 7 & 8 here and on Worksheet D, Item 1. | |

*Note: Worksheet B also includes applications that are done "as if there were multiple counts of convictions," including: multiple-object conspiracies (*see* §1B1.2(d)); offense guidelines that direct such application (*e.g.*, §2G2.1(d)(1) (Child Porn Production)); and stipulations to additional offenses (*see* §1B1.2(c)). Note also that these situations typically require the use of multiple Worksheets A.

## WORKSHEET C
# CRIMINAL HISTORY
## [Page 1 of 2]

Defendant ___Patrick Wittbrodt___                    Docket Number ___18-20560___

> *Note:* As an aid, some of the basic criminal history "rules" are listed below. However, there are numerous additional criminal history rules at §§4A1.1 and 4A1.2 that must be used with Worksheet C and for correct application.

**Enter the Earliest Date of the Defendant's Relevant Conduct** _____
(The date of *the defendant's commencement of the instant offense*(s))

### 1.   Prior Sentences Resulting from Offenses Committed Prior to the Defendant's 18th Birthday

(a) **3 Points** if convicted as an *adult*, for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(d)(1) & (e)(1).

(b) **2 Points** for each prior *adult or juvenile sentence* of confinement of *at least 60 days* not counted under §4A1.1(a) imposed within 5 years or from which the defendant was released from confinement within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(d)(2)(A).

(c) **1 Point** for each prior *adult or juvenile sentence* not counted under §4A1.1(a) or §4A1.1(b) imposed within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(d)(2)(B).

*Note:* Identify as **"adult"** any sentence exceeding one year and one month that resulted from an adult conviction.
A **release date** is required in only two instances: (1) when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period; or (2) when a sentence counted under §4A1.1(b) was imposed more than 5 years prior to *the defendant's earliest date of relevant conduct*, but release from confinement occurred within such 5-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### 2.   Prior Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday

(a) **3 Points** for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(e)(1).

(b) **2 Points** for each prior sentence of imprisonment of *at least 60 days* not counted under §4A1.1(a) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(e)(2).

(c) **1 Point** for each prior sentence not counted under §4A1.1(a) or §4A1.1(b) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(e)(2).

*Note:* A **release date** is required when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

# Worksheet C — Criminal History [Page 2 of 2]

Defendant **Patrick Wittbrodt**          Docket Number **18-20560**

(continued from *Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday*)

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**3. Sum of Criminal History Points for prior sentences under §4A1.1(a), (b), & (c) in Items 1 & 2**

A total of 4 points can be added for all the 1-Point sentences counted in Items 1 & 2 combined.

**4. "Status" of Defendant at Time of Instant Offense**

**2 Points** for "status" if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence (*e.g.*, probation, parole, supervised release, imprisonment, work release, or escape status) for a sentence counted in Items 1 or 2. *See* §4A1.1(d) and Application Note 4. List the type of control and identify the counted sentence that resulted in the control. Otherwise, enter **0 Points**.

**5. Crimes of Violence**

**1 Point** for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under §4A1.1(a), (b), or (c) because such sentence was counted as a single sentence which also included another sentence resulting from a conviction for a crime of violence. A total of 3 points can be added under this subsection. *See* §4A1.1(e) and Application Note 5, and §4A1.2(a)(2) & (p). Identify the crimes of violence and briefly explain why the cases are considered a single sentence. Otherwise, enter **0 Points**.

**4. Total Criminal History Points** (Sum of Items 3–5)

0

**5. Criminal History Category** (Enter here and on Worksheet D, Item 4)

| Total Points | Criminal History Category |
|---|---|
| 0–1 | I |
| 2–3 | II |
| 4–6 | III |
| 7–9 | IV |
| 10–12 | V |
| 13 or more | VI |

I

## WORKSHEET D
# DETERMINING THE SENTENCE
## [Page 1 of 4]

Defendant __Patrick Wittbrodt__                      Docket Number __18-20560__

---

1. **Adjusted Offense Level** (From Worksheet A or B)
   If Worksheet B is required, enter the result from Worksheet B, Item 9. Otherwise, enter the result from Worksheet A, Item 5.

   | 30 |

2. **Acceptance of Responsibility** (See Chapter Three, Part E)
   Enter the applicable reduction of **2** or **3** levels. If no adjustment is applicable, enter "0".

   | − 3 |

3. **Offense Level Total** (Item 1 less Item 2)

   | 27 |

4. **Criminal History Category** (From Worksheet A or C)
   Enter the result from Worksheet C, Item 8, unless the defendant has no criminal history, and as directed at the bottom of Worksheet A, no Worksheet C is used and "I" is entered here.

   | I |

5. **Terrorism; Career Offender; Criminal Livelihood; Armed Career Criminal; Repeat and Dangerous Sex Offender** (See Chapter Three, Part A, and Chapter Four, Part B)

   a. **Offense Level Total**
   If the provision for Career Offender (§4B1.1), Criminal Livelihood (§4B1.3), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in an offense level total higher than Item 3, enter the offense level total. Otherwise, enter "N/A".

   | N/A |

   b. **Criminal History Category**
   If the provision for Terrorism (§3A1.4), Career Offender (§4B1.1), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in a criminal history category higher than Item 4, enter the applicable criminal history category. Otherwise, enter "N/A".

   | N/A |

6. **Guideline Range from Sentencing Table**
   Enter the applicable guideline range from Chapter Five, Part A, in months.

   | 70 | **to** | 87 |

7. **Restricted Guideline Range** (See Chapter Five, Part G)
   If the statutorily authorized maximum sentence or the statutorily required minimum sentence restricts the guideline range (Item 6) (see §§5G1.1 and 5G1.2), enter either the restricted guideline range or any statutory maximum or minimum penalty that would modify the guideline range. Otherwise, enter "N/A".

   | **to** |

   ☐ Check here if §5C1.2 (Limitation on Applicability of Statutory Minimum Penalties in Certain Cases) and 18 U.S.C. § 3553(e) – "The Safety Valve" – are applicable.

8. **Undischarged Term of Imprisonment; Anticipated State Term of Imprisonment** (See §5G1.3)

   ☐ If the defendant is subject to an undischarged term of imprisonment, or an anticipated state term of imprisonment, check this box. Below list the undischarged/anticipated term(s), the applicable section of §5G1.3 and its direction or guidance as to whether the instant federal sentence is to be imposed to run concurrently or consecutively to the undischarged/anticipated term(s), and any sentence adjustment.

---
---
---

# Worksheet D — Determining the Sentence [Page 2 of 4]

Defendant  Patrick Wittbrodt                    Docket Number  18-20560

---

## 9. Sentencing Options (See Chapter Five, Sentencing Table and §§5B1.1(a) and 5C1.1)

Check the applicable box that corresponds to the Guideline Range entered in Item 6 or Item 7, if applicable.

☐ **Zone A** (See §§5B1.1(a)(1) & 5C1.1(a) & (b))

If checked, the following options are available:

- Fine (See §§5C1.1(b) & 5E1.2(a))
- "Straight" Probation (See §§5B1.1(a)(1) & 5C1.1(b))
- Imprisonment (See §5C1.1(a) & (c)(1))

☐ **Zone B** (See §§5B1.1(a)(2) & 5C1.1(a) & (c))

If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (c)(2))
- Imprisonment of *at least one month plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(c)(2))
- Probation with a condition that substitutes intermittent confinement, community confinement, or home detention for imprisonment (See §§5B1.1(a)(2) and 5C1.1(c)(3))

☐ **Zone C** (See §5C1.1(a) & (d))

If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (d)(1))
- Imprisonment of *at least one-half of the minimum term plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(d)(2))

☑ **Zone D** (See §5C1.1(a) & (f))

If checked, *the minimum term is to be satisfied by* a sentence of imprisonment

## 10. Length of Term of Probation (See §5B1.2)

If probation is imposed, the guideline for the length of such term of probation is: (Check the applicable box)

☑ At least one year, but not more than five years if the offense level total is 6 or greater.

☐ No more than three years if the offense level total is 5 or less.

# Worksheet D — Determining the Sentence [Page 3 of 4]

Defendant  Patrick Wittbrodt          Docket Number  18-20560

## 11. Supervised Release (See §§5D1.1 and 5D1.2)

### a. Imposition of a Term of Supervised Release:

☐ Ordered because required by statute (See §5D1.1(a)(1)).

☑ Ordered because a sentence of imprisonment of more than one year is imposed (See §5D1.1(a)(2)).

☐ Is **not** ordered although a sentence of more than one year is imposed, because it is not required by statute **and** the defendant likely will be deported after imprisonment (See §5D1.1(c)).

☐ Ordered because it may be ordered in any other case (See §5D1.1(b)).

### b. Length of Term of Supervised Release

Check the Class of the Offense:

☐ Class A or B Felony: Two to Five Year Term (See §5D1.2(a)(1))

☑ Class C or D Felony: One to Three Year Term (See §5D1.2(a)(2))

☐ Class E Felony or Class A Misdemeanor: One Year Term (See §5D1.2(a)(3))

☐ If a statutorily required mandatory minimum term of supervised release for the offense impacts the guideline range for the applicable Class of Offense above, also check this box, and list the statutory minimum term (See §5D1.2(c)):

_____ years mandatory minimum term of supervised release

☐ If an offense in 18 U.S.C. § 2332b(g)(5)(B) that resulted in, or created a foreseeable risk of, death or serious bodily injury to another person; or if a sex offense, the term of supervised release will not be less than the minimum term established above, and may be up to life (See §5D1.2(b)).

Policy Statement: If a sex offense, the *statutory maximum term* of supervised release is recommended.

## 12. Restitution (See §5E1.1)

a. If restitution is applicable, enter the amount. Otherwise enter "N/A" and the reason:
Total restitution = $8,219,561.44; BC/BS restitution = $7,317,173.51; Medicare restitution = $902,387.93

These amounts are in dispute and defendant is reserving the right to contest the amount of restitution at sentencing.

b. Enter whether restitution is statutorily mandatory or discretionary:
mandatory [18 USC 3663A(c)(1)(B)]

c. Enter whether restitution is by an order of restitution, or **solely** as a condition of supervision. Enter the authorizing statute:
order of restitution [18 USC 3663A(a)(1) / 18 USC 3663A(c)(1)(B)]

# Worksheet D — Determining the Sentence [Page 4 of 4]

Defendant  Patrick Wittbrodt

Docket Number  18-20560

## 13. Fines (The Guideline Range for Fines for Individual Defendants) (See §5E1.2)

|   |   | Minimum | Maximum |
|---|---|---|---|

**a.  Special Fine Provisions**

☐ Check box if any of the counts of conviction is for a statute with a special fine provision. (This *does not* include the general fine provisions of 18 USC § 3571(b)(2) & (d)).

Enter the sum of statutory maximum fines for all such counts.    $

**b.  Fine Table (§5E1.2(c)(3))**
Enter the minimum and maximum fines.    $ 25,000    $ 250,000

**c.  Fine Guideline Range**
(Determined by the minimum of the Fine Table (Item 13(b)) and the greater maximum above (Item 13(a) or 13(b))).    $    $

**d.  Ability to Pay**

☐ Check this box if the defendant does not have an ability to pay.

## 14. Special Assessments for Individual Defendants (See §5E1.3)

Enter the total amount of the statutory special assessments required for all counts of conviction:
- $100 for each felony count of conviction.
- $25 for each Class A misdemeanor count of conviction.
- While not subject to guideline sentencing, the special assessments for a Class B misdemeanor, and a Class C misdemeanor or infraction are $10 and $5 per count, respectively.

**TOTAL:**    $ 100

## 15. Factors That May Warrant a *Departure* (See §1B1.1(b))

Consider Chapter Five, Part H (Specific Offender Characteristics) and Part K (Departures), and other policy statements and commentary in the *Guidelines Manual* that might warrant consideration in sentencing. (*See also* the "List of Departure Provisions" included in the *Guidelines Manual* after the Index).

## 16. Factors That May Warrant a *Variance* (See §1B1.1(c))

Consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole.

**Completed by**  Michael Heesters

**Date**  2/1/2019