UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                        Case No. 18-cr-20560

v.                                        Hon. Laurie Michelson

D-1    PATRICK WITTBRODT,           Magistrate Stephanie Dawkins Davis

              Defendant.

_____/

## DEFENDANT PATRICK WITTBRODT'S SENTENCING MEMORANDUM

This Sentencing Memorandum is not an effort of Defendant Patrick Wittbrodt ("Mr. Wittbrodt") to avoid culpability for his crime. To the contrary, he has fully acknowledged the extent of his crime during the Plea Agreement hearing. He accepts full responsibility that he is guilty of one instance of conspiracy to commit healthcare fraud, in violation of 18 U.S.C. §§ 1347, 1349.

This Memorandum is purely filed as a means of providing a more complete picture of the person Mr. Wittbrodt is and continues to be; a hard-working family man. If Mr. Wittbrodt is sentenced to a long period of incarceration outside of his residence, it would significantly jeopardize the financial stability of his family, which may cause a domino effect of unanticipated suffering for other non-culpable parties. Therefore, under the circumstances, Mr. Wittbrodt respectfully requests that this Court consider a sentence of house-arrest with conditions of community service, or in the alternative, confinement to a minimum-security prison camp.

## I.    PROCEDURAL HISTORY

On August 14, 2018, the United States of America ("Government") charged Mr. Wittbrodt in a twenty-five count Indictment for one instance of conspiracy to commit healthcare fraud in violation of 18 U.S.C. §§ 1347, 1349, and multiple instances of healthcare fraud and money laundering in violation of 18 U.S.C. §§ 1347 and 1957. *See* Doc. No. 1.[1] These charges were brought in conjunction with forfeiture proceedings under 18 U.S.C. §§ 981 and 982, and 28 U.S.C. § 261.

Following the Indictment, on March 6, 2019, Mr. Wittbrodt entered into a Plea Agreement with the Government by pleading guilty to one count of conspiracy to commit healthcare fraud. On the same day, the details of this crime were specifically described under oath before this Court during the Parties' Rule 11 Plea Agreement Hearing.

Count One carries a maximum penalty of up to ten (10) years imprisonment, a discretionary fine of up to $250,000, a mandatory $100 special assessment, and the possibility of restitution. *See* Doc. No 46, *Plea Agreement.* In the Plea Agreement, the Parties stipulated that the guideline range should be calculated based on Guideline section 2B1.1. *Id.* at 18. This resulted in an initial offense level of 26, which received a four-level enhancement for "leader and organizer." *Id.* The Parties further stipulated that Mr. Wittbrodt had demonstrated timely acceptance of responsibility for his offense and timely notified the Government of his intention to enter a guilty plea, which resulted in a three-level downward departure. *Id.* at 22. Therefore, the total offense level agreed upon by the Parties is **twenty-seven (27)**. *Id.* Taking these factors into account, the Parties' agreed sentencing **guideline range is 70 – 87 months**. *Id.*

---

[1] On August 23, 2018, the Government issued the Superseding Indictment that charged Mr. Wittbrodt with an additional two counts of money laundering, in violation of 18 U.S.C. 1957. *See* Doc. No. 24.

The Plea Agreement also mandated Mr. Wittbrodt pay a "special assessment" of $100 and left open the possibility of statutorily mandatory restitution under 18 U.S.C. § 3663A(c)(1)(B). The Plea Agreement also provides that the Court may impose a fine no less than $25,000 and no greater than $250,000. *Id.* at 25.

On or about May 24, 2019, the Probation Department provided Defense Counsel with a copy of the Presentencing Investigation Report (the "PIR").  The PIR calculates the applicable sentencing guideline range in line with the Parties' Rule 11 Plea Agreement (i.e., 70 – 87 months). *See* PIR, at 8. Mr. Wittbrodt is currently scheduled to be sentenced by this Court on October 7, 2021 at 2:00 p.m.

Independent of prior determinations of the applicable sentencing guidelines, for the reasons stated herein, Mr. Wittbrodt respectfully requests for this Court to consider a variance from the guidelines and issue a sentence of house-arrest with conditions of community service, or in the alternative, confinement to a minimum-security prison camp.

II.     **BACKGROUND**

A.      **Mr. Wittbrodt's Childhood, Early Adulthood, Career, & Business**

Mr. Wittbrodt describes growing up in a loving household with multiple siblings, who all still provide emotional support for him through these troubling times. While growing up in Grand Blanc, Michigan, Mr. Wittbrodt attended and graduated from Grand Blanc High School. He would subsequently go on to attend the University of Michigan, where he would graduate in 2008 with a Bachelor of the Arts degree.

Broadly, Mr. Wittbrodt has chosen a career path in pharmaceutical sales. His initial experience was based on selling orthopedics and related equipment, then transitioned into selling topical pain creams, which ultimately led to the instant conviction. Currently, Mr. Wittbrodt is still

3

operating in the industry and has a legitimate company called 2 Rejuv, LLC that sells hormone replacement treatments. In in the PIR, Mr. Wittbrodt notes that it is his goal to grow his current hormone replacement business in order to provide additional income for his family, for which, he is largely the sole provider. His partner in Rejuv, LLC, Daniel Westbrook, also hopes that Mr. Wittbrodt will be able to maintain his involvement in the business and notes that his incarnation also puts her livelihood at risk and that of the Wittbrodt family. *See* **Exhibit A,** *Character Letters of Reference.*

Also, as fate would have it, during these criminal proceedings Mr. Wittbrodt has been working as an employee of his father's business and largely running the company while his father received necessary cancer treatment. *See* **Exhibit A.** According to Mr. Wittbrodt's father, the company, which specializes in generating and implementing the floorplans for large industrial assembly lines, faced the possibility of dissolution without Mr. Wittbrodt being able to aid in major ongoing projects. *Id.* While under indictment, Mr. Wittbrodt's involvement with his father's company often required him to travel inter-state to facilitate the instillation of these different industrial assembly lines, and he did so while staying within the confines of his bond conditions and while cooperating with the government.

### B.   Community Involvement & Character

As is noted throughout the PIR, Mr. Wittbrodt has had an alcohol addiction since the early 2000s. While he is proud of his over 16 years of sobriety, Mr. Wittbrodt accredits his success to his heavy involvement in the Alcoholics Anonymous program ("AA"). Since starting AA, Mr. Wittbrodt has dedicated himself to the course of recovery and has mentored many others along the way. As a testament to this fact, attached hereto as **Exhibit B** are letters from his mentors and mentees in the program.

One attestation is from a veteran of the United States Air Force, who notes that Mr. Wittbrodt unselfishly helped him address his own addiction and proved to be the sponsor and role model he needed to maintain his own sobriety. *Id.* Another firsthand account delivered by Jerald Lane, a member of AA since 1998, notes that he has attended hundreds of AA meetings with Mr. Wittbrodt and calls him a "great person" who is devoted to the program and helping others. *Id.*

In the context of this criminal case, it is difficult to cast a shadow on Mr. Wittbrodt that does not involve his criminal conduct. However, notwithstanding his isolated criminal activity, numerous character letters show that Mr. Wittbrodt has been a loving son, husband, father and involved member of his community. These facts are worthy of the Court's further consideration.

### C.     Substantial Assistance to the Government

As noted in the Plea Agreement, at the time of entering into his Plea, Mr. Wittbrodt also entered into a cooperation agreement with the Government to assist with its investigation of topical cream healthcare fraud cases. On information and belief, the Government will be filing its own Section 5K1.1 motion, that acknowledges Mr. Wittbrodt's contribution to ongoing investigations and assistance and request a sentence that at the low end of the guidelines with an additional reduction of 10 months (i.e., equivocating to a 60-month sentence).

While the Government's efforts in this regard are certainly appreciated by Mr. Wittbrodt, they are not aligned with most 5K reductions that generally seek to reduce a sentence by up to 50%. Mr. Wittbrodt would contend that his substantial assistance is a worthy consideration for the Court to weigh in granting a further variance of his sentence down to the range of 35 – 43 months.

Significantly, the Court should consider that it was Mr. Wittbrodt's cooperation that leveraged the plea agreements of the other two co-defendants in this case, both of which maintained that they were taking this matter to trial until they learned of Mr. Wittbrodt's

cooperation with the Government. In addition, Mr. Wittbrodt provided additional details concerning the unindicted illicit pharmacies that primarily benefited from these schemes and received an overwhelming amount of the proceeds from the fraudulent activity. It is unclear what the Government intends to do with this information, but the pharmacies were certainly the "big fish," so to speak, of this criminal conspiracy. In an ideal sense, the Government would seek indictments for the individuals that ran and operated the topical pain cream pharmacies in order to ensure that similar fraudulent activity was never carried out.

Thus, while Mr. Wittbrodt stands ready to accept responsibility for his crime, in a sense he has attempted to make amends by excepting early responsibility for his wrongdoing *and* by providing substantial assistance to the Government in developing evidence to prosecute others for breaking the law. Mr. Wittbrodt would humbly submit to the Court that his prompt and meaningful cooperation with the Government is a factor that is worthy of a downward variance of more than 10 months from the bottom of the guidelines.

## II.      ARGUMENT

### A.      Sentencing Standard

The Guidelines are now but one of seven statutory factors to weigh when formulating a sentence. *United States v. Booker*, 543 U.S. 220 (2005); 18 U.S.C. § 3553. In *Booker*, the Supreme Court held that the mandatory manner in which the Guidelines required courts to impose sentencing enhancements based on facts found by the court, by a preponderance of the evidence, violated the Sixth Amendment to the Constitution. *Id.* at 233. Although the Guidelines are no longer mandatory, *Booker* makes clear that a sentencing court must still "consult [the] Guidelines and take them into account when sentencing." *Id*. The prevailing standard is appropriately described in *Gall v. United States,* 552 U.S. 38, 49 (2007):

[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See 551 U.S., at 347 – 348, 127 S.Ct. 2456. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

Similarly, the Sixth Circuit holds that in determining a criminal sentence, a district court must consider the factors listed in 18 U.S.C. § 3553(a). *United States v. Williams*, 436 F.3d 706, 708 (6th Cir.2006). *United States v. Carballo-Arguelles*, 446 F. Supp. 2d 742, 743 (E.D. Mich. 2006). If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-Guidelines sentence (a "variance sentence"), but should explain its reasons pursuant to 18 U.S.C. § 3553(c)(2). *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

## B.   A Downward Variance May Be Justified Under 18 U.S.C. § 3553

The Supreme Court's decision in *Booker* rendered the Sentencing Guidelines "advisory," requiring sentencing courts to tailor the sentence in light of other statutory concerns as well. *See Booker*, 543 U.S. at 233. Factors to be considered in 18 U.S.C. § 3553(a) include:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.

(5)     Potential policy concerns . . . issued by the Sentencing Commission;

(6)     The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(7)     The need to provide restitution to any victims of the offense.

Although Mr. Wittbrodt does not foreclose of the Court taking any factor into account under § 3553, "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. U.S.*, 518 U.S. 81, 113 (1996). Moreover, 18 U.S.C. § 3661 states that, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Therefore, it is well within this Court's authority to consider all the facts mentioned in this case when deciding to grant a downward variance.

### (i)     Section 3553(a)(1)

Pursuant to § 3553(a)(1), the nature and circumstances and the characteristics of a defendant may be considered. Mr. Wittbrodt is an individual who pled guilty to one count of conspiracy to commit healthcare fraud. Prior to this incident, Mr. Wittbrodt was a hardworking family man with no history of significant criminal conduct.

As described above, Mr. Wittbrodt is basically the sole provider for his family and his business activities are tied to the livelihood of others as well. Thus, Mr. Wittbrodt's incarceration would have an unintended domino effect. Not only would it be taking him away from his family it would be putting the livelihood of others in jeopardy as well.

There are a substantial number of cases which find a downward departure or variance justified based on the extraordinary effect to a business resulting in the loss of jobs. *See e.g., U.S. v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995) (Second Circuit affirmed a downward departure on the basis of business impact); *U.S. v. Olbres*, 99 F.3d 28 (1st Cir. 1996) (case remanded to determine if extent of job loss is outside the heartland of such cases); *U.S. v. Kloda*, 133 F.Supp.2d 345 (S.D.N.Y. 2001) (in business tax fraud case, one-level departure granted in part because of "the needs of [defendant's] business and employees").

Thus, the extraordinary financial impact to Mr. Wittbrodt, his family, his business partner (and her family), employees, and the company's customers is not something anticipated by the Guidelines. This is, however, a matter which warrants great consideration before this Court. Accordingly, it is within this Court's discretion to grant a downward variance for consequences that are unanticipated by the sentencing guidelines.

**(ii)      Section 3553(a)(2)**

Under § 3553(a)(2)(A) – (D), this Court can take into consideration traditional sentencing concerns. In the case at hand, there is no indication these factors weigh against Mr. Wittbrodt.

There is certainly no need to protect the public from further criminal conduct as Mr. Wittbrodt's criminal conduct was a non-violent isolated incident. Moreover, Mr. Wittbrodt has demonstrated complete acceptance of responsibility of his criminal conduct and has assisted the Government in "cleaning up" this type of fraudulent activity. He immediately held himself accountable for the crime, has cooperated with the prosecution and other government entities throughout the course of the Plea Agreement, and has shown great remorse for what he has done.

Taking these facts into consideration, a variance sentence of house arrest with appropriate conditions would likely be adequate to reflect the seriousness of the offense and Mr. Wittbrodt's proactive steps to take early responsibility for his crime.

(iii)    **Sections 3553(a)(3)**

Importantly, § 3553(a)(3) directs this Court to consider the kinds of sentences available and encourages the Court to consider sentencing options such as probation or other non-custodial forms of punishment. These forms of punishment are often assigned for first time offenders who plead guilty to a single count of conspiracy to commit healthcare fraud. *See e.g., United States v. Atkins,* No. CV 3:15-CR-519-L, 2016 WL 7240594, at *1 (N.D. Tex. Nov. 4, 2016)*,* (after pleading guilty to a single count of conspiracy to commit healthcare fraud, defendant was sentenced to three years' probation and nine months of home confinement).[2] In some instances within the Sixth Circuit, first time offenders who plead guilty to *multiple* healthcare related felonies have still received probationary sentences. *See e.g., United States v. Hunt,* 521 F.3d 636 (6th Cir. 2008) (Defendant was convicted in the United States District Court for the Middle District of Tennessee, of health care fraud, conspiracy to commit health care fraud, and making false statements relating to health care fraud, and *was sentenced to five years of probation*) (emphasis added).

Thus, in order to avoid sentencing disparities, the Court should take alternatives to incarceration into account.

---

[2] In an analogous fashion, there are also countless other non-healthcare related instances of fraud convictions where the defendant was sentenced to a non-custodial sentence. *See e.g., United States v. Del Campo*, 695 F. App'x 453 (11th Cir. 2017) (Defendant convicted of bank fraud, which carried a sentencing guideline of 46 to 57 months and was sentenced to five years of supervised release, the first six months of which were to be served under home detention).

**(iv)      Sections 3553(a)(4) – (5)**

The fourth and fifth factors, § 3553(a)(4) – (5), require this Court to consider other factors enumerated in the United States Sentencing Guidelines and Policy Statements applicable to this case. In this regard, the Court may look to USSG § 5K2.0(a)(2)(B) which calls for considering "circumstances not adequately considered" by the sentencing guidelines.

One factor that has not yet been discussed herein that should be considered by the Court is the Covid-19 pandemic. This pandemic is completely unanticipated by the Sentencing Guidelines. In support of this factor, U.S. Attorney General, William Barr, has issued two memoranda to the U.S. Bureau of Prisons directing that prisoners generally fitting Mr. Wittbrodt's profile with respect to being considered a low threat to society and having a low chance of recidivism be considered for early release.[3]

Accordingly, these facts are ripe for this Court's consideration under other factors enumerated in the United States Sentencing Guidelines and Policy Statements applicable to this case. Therefore, a downward variance is a worthy consideration.

**(v)      Sections 3553(a)(6)**

The sixth factor, § 3553(a)(6), focuses on the need to avoid sentencing disparities among similarly situated defendants. In this regard, Defense Counsel incorporates the analysis from the proceeding section where instances are cited to which illustrate that defendants have received a substantially lower non-custodial sentence than recommended by the guidelines. Notwithstanding

---

[3] Attorney General William P. Barr, Memorandum for Director of Bureau of Prisons, Re: Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic, Office of the Attorney General (Mar. 26, 2020); *see also,* Attorney General William P. Barr, Memorandum for Director of Bureau of Prisons, Re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19, Office of the Attorney General (Apr. 3, 2020) *https://www.bop.gov/coronavirus/docs/bop_memo_home_ confinement_april3.pdf.*

those cases, there is also a further mitigating factor in the case at present where Mr. Wittbrodt provided substantial assistance to the Government and is also eligible for leniency based on a Section 5k1.1 departure form the guidelines. Thus, when considering the totality of the circumstances, Mr. Wittbrodt would fall into a category of non-violent first-time offenders that receive largely non-custodial sentences, but he has the additional mitigating factor of also providing substantial assistance to the Government.

      **(vi)**      <u>**Sections 3553(a)(7)**</u>

Finally, § 3553(a)(7) focuses on restitution. In the matter at hand, restitution has yet to be ordered. However, Mr. Wittbrodt was essentially financially striped of his ill-gotten gains in this case and would have little ability to make restitution payments.

As the Court is aware, the charges in the Indictment were brought in tandem with a forfeiture action. On July 1, 2019, the Parties stipulated to the forfeiture of certain of Mr. Wittbrodt's assets, which were traceable to the conspiracy to commit healthcare fraud charge; in doing so, he gave up the interest he had in his bank, savings, and investment accounts, his vehicle, and in any real property titled in his name. He also stipulated to the entry of a forfeiture money judgment against him in the amount of $796,522.31, "representing the total value of property subject to forfeiture for defendant's violation of Count One of the First Superseding Indictment." So, while an order for restitution is within the Court's discretion, it may be duplicative when already considering the forfeiture action that has taken place and Mr. Wittbrodt's consensual efforts to repay the Government.

Thus, a complete analysis of the § 3553(a) factors as set forth above, weigh in Mr. Wittbrodt's favor and provide ample grounds for this Court to issue a variance from the Federal Sentencing Guidelines.

## III.     CONCLUSION

The experience of facing his failures in this situation has had a profound impact on Mr. Wittbrodt. He has placed all that he holds dear in this world in jeopardy and genuinely fears for his family in his absence. The psychological and emotional toll he has experienced is not something that can be reflected in the words of this Memorandum alone; and clearly, the stress of this incident has taken an immersible tole on the Wittbrodt family.

Mr. Wittbrodt stands before this Court a humbled man. He seeks a measure of mercy, not with an aim to avoid responsibility or justice, but simply for an opportunity to continue to rebuild and preserve his life.

Based on the foregoing authorities and arguments discussed herein, and further evidence to be presented at sentencing, the Defendant, Mr. Wittbrodt, respectfully requests that this Court impose a non-custodial sentence with appropriate conditions, or in the alternative, confinement to minimum security prison camp.

Respectfully submitted,

VARNUM LLP

Date:   September 29, 2020           By:   _/s/ Eric M. Nemeth_____
                                     ERIC M. NEMETH (P42925)
                                     WILLIAM L. THOMPSON (P80123)
                                     *Attorneys for Defendant*
                                     160 W. Fort St., 5th Floor
                                     Detroit, MI 48226
                                     Phone: (313) 481-7300
                                     Email: emnemeth@varnumlaw.com
                                              wlthompson@varnumlaw.com

13

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 29, I served the Memorandum on all counsel of record via ECF filing and that both the Memorandum and Exhibits have been served on all counsel of record via First Class mail.

/s/      <i>Eric M. Nemeth</i>
ERIC M. NEMETH (P42925)

18570386

14