UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

|  |  |
|---|---|
| Plaintiff, | No. 18-cr-20560 |
| -vs- | Hon. Laurie J. Michelson |
| D-1 PATRICK WITTBRODT, | |
| Defendant. | Count One: Conspiracy To Commit Healthcare Fraud |
| | Maximum Penalty: Up to 10 years |
| | Maximum Fine: $250,000 |
| | Supervised Release: Up to 3 years |

## SENTENCING MEMORANDUM

The United States by and through undersigned counsel respectfully submits this sentencing memorandum pertaining to defendant Patrick Wittbrodt. For the reasons set forth below, the United States submits that a 60-month prison sentence is necessary to achieve the aims of the Sentencing Reform Act.

## I.   Sentencing Reform Act Factors

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of

the offense, and the history and characteristics of the defendant; (2) the need for a

sentence to reflect the basic aims of sentencing (including retribution, deterrence,

incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4)

the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the

need to avoid unwarranted sentencing disparities among defendants with similar

records who have been found guilty of similar conduct; and (7) the need for

restitution. Discussed below are the factors most relevant to this particular

defendant.

### a. The Nature of the Offense and Characteristics of the Defendant

The defendant is a 46 year-man with a bachelor's degree. He lacks any

significant criminal history until he led this conspiracy to commit healthcare fraud

for approximately three years from July 2014 through July 2017. (PSR ¶9). Along

with his co-defendants to receive kickbacks in exchange for expensive pain and

scar creams. He recruited Jeffrey Fillmore who had relationships with UAW union

halls to participate in this scheme knowing that the UAW health plan would

reimburse pharmacies which filled the prescriptions at significant rates. (PSR ¶

11). Wittbrodt and the others then began recruiting UAW members' relatives to

provide their health insurance information so that they could also receive the

medically unnecessary pain creams Wittbrodt attended UAW union meetings where he and the others made presentations to UAW members. In exchange for their insurance information, the union members and their family members received prescriptions for the expensive pain and scar creams. The members were not required to pay co-pays for the prescriptions nor did the members decide the pharmacies, which would fill the prescriptions.

Wittbrodt chose the pharmacies in which the pain and scar prescriptions would be filled. (PSR ¶ 12). Once these pharmacies received the medically unnecessary prescriptions, the pharmacies submitted claims to Blue Cross and Medicare. Often the insured beneficiaries did not request prescription refills but they continued receiving additional prescriptions. (PSR ¶ 12). Ultimately, the medically unnecessary prescriptions Wittbrodt and his co-conspirators cause to be submitted to Blue Cross and Medicare resulted more than a combined $8 million dollars in loss to Blue Cross and Medicare.(PSR ¶ 15).

As individuals and their families grappled with the costs associated with health care, Patrick Wittbrodt enriched himself with a scheme where he was responsible for the loss of more than $8 million. No one has to look far to know that our country has grappled for decades with questions about how to cover

medical costs for our country's citizens. Mr. Wittbrodt is not a man who lacked the wherewithal to provide for his family with an honest day's work. But, he chose to cheat every man and woman who makes a living and subjects themselves to the payroll tax. He also defrauded UAW members, who either contribute directly or indirectly for their health care coverage.

**b. The Sentence Imposed Must Reflect Seriousness of Offense, Promote Respect for the Law, and Provide Just Punishment**

Health care fraud is not a victimless crime. Far too many people in the Eastern District of Michigan have found stealing from health insurers simply too easy and too tempting to resist. And yet there can be no dispute that health care expenditures are among the most critical individuals make. Many find their medical expenses far exceed their ability to pay. A prison sentence of 60 months' imprisonment will reflect the seriousness of the offense, promote respect for the law, and will provide a just punishment

**c. Deterrence to Criminal Conduct**

The Sentencing Reform Act requires this court to impose a sentence which provides both for general deterrence to criminal conduct and protects the public from further crimes by this defendant.

Healthcare fraud, unfortunately, remains an acute problem both locally and nationally. In the last few weeks, a jury in the Eastern District of Michigan convicted a physician in a scheme where the Department of Justice estimates the loss exceeds $100 million.[1] Nearly every judge in the Eastern District either has or has had on their docket a health care fraud case where the loss exceeds $1 million. The fraud loss to both public and private health care insurers in the Eastern District of Michigan remains staggering despite years of increased law enforcement efforts. While Wittbrodt's scheme does not rate among the worst in Michigan, there can be no doubt that his scheme deprived health care beneficiaries of millions of sorely-needed health care dollars. Deterring others who might be tempted to follow Wittbrodt's scheme requires a significant custodial sentence.

Any minimum wage worker would be shocked still to learn that they are victims of people like Wittbrodt who steal millions from them. Frankly, any worker whose paycheck is taxed for Medicare or who can afford private pay health insurance has cause to be outraged by Wittbrodt. Any American who can afford private pay health insurance, similarly, has as much reason to be outraged by the scheme Wittbrodt led. The United States could call any number of citizens who

---

[1] https://www.justice.gov/opa/pr/pain-doctor-convicted-over-100-million-health-care-fraud-scheme

have been concerned about how they will fund the medical needs of their relatives
to testify about health care fraud's impact on their financial and mental health.

A custodial sentence is necessary not only to deter to future health care
fraudsters but to send a message to workers that the wages they entrust to the
government and private health insurance are not being wasted. Permitting the rank
graft engineered undermines trust in institutions and feeds cynicism. Any
individual or family who has experience anxiety about how to fund their health
care would have appreciated the millions in loss caused by Wittbrodt and his co-
conspirators.

### d.  Available Sentences

While Congress set the statutory maximum at 10 years' imprisonment, the
Sentencing Guidelines agreed to by the parties call for a prison sentence of 70-87
months.

### e.  Avoid Sentencing Disparities Among Defendants

The Sixth Circuit previously explained that this factor concerns national
disparities among similarly situated defendants. *United States v. Conaster*, 514
F.3d 508, 521 (6th Cir. 2008). A sentence within the guidelines avoids creating a

disparity among defendants nationally. *United States v. Swafford* 639 F.3d 265, 270 (6th Cir. 2011).

## II.   **Restitution & Forfeiture**

Wittbrodt erroneously claims that "restitution is within the court's discretion." (ECF No. 115, Wittbrodt Sent. Mem. PgID 588). The Government concurs with the PSR, which notes that the "Mandatory Victim Restitution Act of 1996 apply." (PSR ¶15). He further attempts to conflate forfeiture and restitution in his Sentencing Memorandum. Forfeiture and restitution are separate remedies with distinct purposes. *United States v. Pescatore*, 627 F.3d 128, 138 (6th Cir. 2011). Wittbrodt's victim. *See also, United States v. Bazzi*, 2018 WL 5720347 (E.D. Mich. Nov. 1, 2018, Roberts J.),… "the court does not also have the discretion to reduce the restitution because of the forfeiture obligation). The United States is obliged under the MVRA to order restitution in the amount of $7,317,173.51 to Blue Cross and Blue Shield of Michigan and $902,387.93 to the Centers for Medicare and Medicare Services.

## III.   **Amended Stipulated Preliminary Order of Forfeiture**

This court entered a Stipulated Preliminary Order of Forfeiture in which Wittbrodt agreed to forfeit approximately $202,461.31 and, further agreed, to

the imposition of a forfeiture judgment in the amount of $504,061. (ECF No. 96, Amended Preliminary Order of Forfeiture). The initial Preliminary Order of Forfeiture required the imposition of a forfeiture judgment in the amount of $796,522.31 but further stipulated that the forfeiture judgment would be reduced by the amount forfeited by the Government, which results in a forfeiture judgment of $504,061. Upon approval from the court, the United States will submit the appropriate forfeiture language for inclusion in Wittbrodt's judgment.

## IV.   Conclusion

The government respectfully submits that a sentence of 60 months' imprisonment would be but not greater than necessary to achieve the aims of the Sentencing Reform Act.

Respectfully submitted,

Saima S. Mohsin
Acting United States Attorney

s/Philip A. Ross
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9790
Philip.Ross@usdoj.gov

Date: September 30, 2021

8

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served upon defense counsel via ECF on September 30, 2021.

s/Philip A. Ross
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9790
Philip.Ross@usdoj.gov

9